**Dennis C. TERRELL, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 60A01–8607–CR–177.**

Court of Appeals of Indiana, First District.

May 14, 1987.

Rehearing Denied June 26, 1987.

John J. Fuhs, Petri & Fuhs, Spencer, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Dennis C. Terrell appeals his conviction by jury trial of arson, a class C felony.[1] We affirm.

## FACTS

Terrell owned a jeep which had mechanical problems. On August 10, 1982, he and Bruce Strunk devised a plan to burn the jeep to obtain the insurance money. Strunk and Terrell went to the home of Kathy Smith and told Smith, Darren Dayhuff, and Deana Burchfield about the plan. The entire group then drove to Martinsville to obtain marijuana and to take Smith to work. During this trip they decided to tell police, as an alibi, that they were at the fair in Martinsville. They then returned to Spencer and got the jeep. Strunk, Terrell, Dayhuff, and Burchfield took the jeep to an abandoned railroad line near Patricksburg where Strunk and Terrell removed the tires, battery, a flashlight, and other items

from the jeep. They broke the windows and headlights on the jeep, slashed the top and seats, and set the jeep on fire. The items removed from the jeep were taken to Smith's residence. Terrell reported the jeep stolen to police and reported the loss to his insurance company.

Other relevant facts are stated in our discussion of the issues.

## ISSUES

Terrell raises the following issues which we have combined and restated:

1. Did the trial court err in allowing the state to introduce evidence of Terrell's juvenile record for impeachment purposes and in instructing the jury that his juvenile record could be considered for such purpose?

2. Did the trial court err in giving an instruction concerning admissions made by Terrell?

3. Did the trial court err in refusing Terrell's tendered instruction concerning the testimony of his accomplices?

4. Did the trial court err in refusing to allow Terrell to cross-examine a state's witness concerning that witness's use of marijuana?

## DISCUSSION AND DECISION

*Issue One*

Initially, the trial court had sustained Terrell's motion in limine prohibiting the prosecution from mentioning his prior juvenile record. When, in opening statement, Terrell's attorney stated to the jury "this man has no record", the court, on the state's motion, lifted its order on the motion in limine and allowed the state to introduce evidence of Terrell's prior juvenile record of adjudication of delinquency for nine acts of burglary. The trial court further instructed the jury that they could consider such juvenile record in deciding the weight to be given to his testimony but not as proof of guilt in this case.

1. Indiana Code section 35–43–1–1(c).

Our supreme court clearly has held that juvenile adjudications may not be used for impeachment purposes because they are not the equivalent of criminal convictions. *Roland v. State* (1986), Ind., 501 N.E.2d 1034; *Perkins v. State* (1985), Ind., 483 N.E.2d 1379. The state argues that such juvenile adjudications are admissible under Indiana Code section 31-6-8-1(g) which provides that the juvenile court shall grant any party to a criminal or juvenile proceeding access to a person's legal records to impeach the person as a witness, and by Indiana Code section 31-6-8-1.2(f) which authorizes the head of a law enforcement agency to release such records for the same purpose, and by the decision of the Supreme Court of the United States in *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. In the Commentary by J. Richard Kiefer to West's A.I.C. § 31-6-8-1, it is stated these two statutory provisions were drafted in response to *Davis v. Alaska*. Both I.C. 31-6-8-1(g) and 31-6-8-1.2(f) provide that "such information may only be used in criminal or juvenile delinquency proceedings in accord with the law of evidence." Since our supreme court has held such juvenile adjudications are not admissible, that is the law of evidence, and in accord therewith, the juvenile adjudication could not be used.

In *Davis v. Alaska*, the Supreme Court of the United States rejected the state's claim of superior state interest in maintaining the confidentiality of juvenile records, and held that the Confrontation Clause of the Sixth Amendment gave a defendant the right to cross-examine a crucial state witness concerning his status as a juvenile probationer. The prosecution in *Davis* did not intend to use the juvenile record for general impeachment purposes, but intended to show the witness's probationary status to argue that the witness testified out of fear of revocation of his probation. The Supreme Court upheld the defendant's right to develop the inference of undue pressure upon the witness because of his vulnerable status as a probationer.

In this case, there is no suggestion of any purpose in the use of Terrell's juvenile record other than for general impeachment purposes. Our supreme court has upheld the denial of cross-examination of a state's witness concerning a juvenile record holding such juvenile adjudications inadmissible for impeachment purposes. *Perkins*, at 1384; *Pallett v. State* (1978), 269 Ind. 396, 401, 381 N.E.2d 452, 456. This same protection applies at least equally, if not more strongly, to a defendant who is subject to prejudice by the introduction of a juvenile record because of the danger of being convicted because he or she was a bad person.

*Davis*, because of the intended use of evidence of the witness's juvenile probationer status, is factually distinguishable from this case, and does not necessarily support the state's position. Further, as we previously have pointed out, our supreme court clearly has rejected use of a juvenile adjudication for impeachment. As an intermediate appellate tribunal, we are bound by the pronouncements of our supreme court.

■ . However, accepting the premise that juvenile adjudications ordinarily are not admissible for impeachment purposes, we hold that no reversible error occurred. In his opening statement to the jury, Terrell's counsel stated "this man has no record." Record at 119. It would be unconscionable to permit Terrell's attorney to state to the jury that his client had no record and then permit him to prevent disclosure to the jury of a juvenile adjudication of delinquency for nine acts of burglary. The door was opened by Terrell's attorney, and it was not error to permit the state, under those circumstances, to reveal Terrell's juvenile record. *See, Daniels v. State* (1983), Ind., 453 N.E.2d 160, 169 (where defendant's mother testified her son had no juvenile court record for burglary, state was permitted to cross-examine as to a conviction for burglary).

Even if admission of Terrell's juvenile record into evidence was erroneous, it was not reversible error. Not every error of the trial court requires reversal. *Gambill v. State* (1985), Ind., 479 N.E.2d 523; *Watkins v. State* (1984), Ind., 460 N.E.2d 514.

Only those errors which prejudice the defendant are cause for reversal. *Id.* Where the evidence of guilt is overwhelming, admission of inadmissible evidence is harmless error. *Maiden v. State* (1985), Ind., 477 N.E.2d 275; *Howell v. State* (1981), 274 Ind. 490, 413 N.E.2d 225. In view of the testimony of Strunk, Smith, and Dayhuff, and evidence of admissions of guilt made by Terrell as set out in our discussion of Issue Two, admission of Terrell's juvenile record was harmless.

Since, under the circumstances of this case, it was not reversible error to admit evidence of Terrell's juvenile record, it was not error to instruct the jury concerning such record and the limited use for which the jury could consider it.

*Issue Two*

■ Terrell complains of error in the giving of state's tendered instruction number 1 concerning an admission which read:

"Evidence has been introduced that the defendant made an admission of fact relating to the crime charged in the information.

"It is for you to decide whether the Defendant made the admission, and if so, what weight should be given to the admission. In determining the weight to be given to an admission, you should consider all of the circumstances under which it was made."

Terrell's only objection to this instruction was that there was no evidence of any admission by him. He is wrong. Mary (Kathy) Smith testified to an admission by Terrell, Record at 316, as did Peggy Blaney, Record at 223. The instruction was proper, supported by the record, and it was not error.

*Issue Three*

Terrell next asserts the trial court erred in refusing his tendered instruction number 1 which read:

"The defense may prove the expectation of gain of any witness for the prosecution, whether founded upon an agreement with the prosecution or not, under which said witness for the prosecution testified, and if the defense have made a showing that there is such expectation of gain, the testimony of such witness for the prosecution should be received with great caution."

■ The court's final instructions properly instructed the jury concerning the credibility of witnesses and weight of their testimony including, among other things, that the jury could consider "any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties." Record at 80. The trial court also instructed the jury concerning the weighing of the testimony of an accomplice. The subject of the tendered instruction was covered adequately by the instructions given. Consequently, refusal of the instruction was not error. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115. Instructions regarding the credibility of witnesses should be general in nature and equally applicable to all witnesses. *Murphy v. State* (1977), 267 Ind. 184, 369 N.E.2d 411. An instruction which is directed to the testimony of a particular witness and intimates an opinion on the credibility or weight of that witness's testimony invades the province of the jury and is error. *Fox v. State* (1986), Ind., 497 N.E.2d 221; *Murphy*, 267 Ind. at 196, 369 N.E.2d at 417. The tendered instruction obviously was directed at the testimony of Terrell's accomplices who testified for the state. However, all details of their agreements with the state were placed before the jury. Thus, the jury had before it sufficient facts to enable them to be well able to assess the credibility of the accomplices and to give proper weight to their testimony. *Asbell v. State* (1984), Ind., 468 N.E.2d 845; *Campbell v. State* (1980), 274 Ind. 88, 409 N.E.2d 568. The facts of the plea agreements of the accomplices with the state having been fully disclosed, Terrell was not deprived of the opportunity to attack their credibility on such basis. Refusal of the tendered instruction was not error.

*Issue Four*

■ Finally, Terrell claims the trial court erred in precluding him from asking state's witness Dayhuff, on cross-examination, if

the witness was a regular user of marijuana. This precise question has been decided adversely to Terrell by our supreme court in *Stonebraker v. State* (1987) Ind., 505 N.E.2d 55. There, the defendant sought to introduce evidence of drug usage and sales by witnesses which had not been reduced to conviction. The trial court limited such evidence to use at a particular time when the witnesses gave testimony which would affect their ability to think or act. Our supreme court upheld this limitation on cross-examination going to collateral drug use. Here, there was evidence that all the parties obtained and used marijuana prior to the incident in question. This was proper. *Id.* Cross-examination of Dayhuff concerning his alleged regular use of marijuana was properly rejected as an improper attempt to impeach him by evidence of criminal acts not reduced to conviction. *Id.*

Judgment affirmed.

SHIELDS, P.J., and NEAL, J., concur.

---

1. Indiana Code section 35–42–4–3.