Daryl C. NEWMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A04–9812–CR–584.

Court of Appeals of Indiana.

Nov. 17, 1999.

Transfer Denied Jan. 19, 2000.

Robert W. Rock, Anderson, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Kathryn Janeway, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Daryl C. Newman was convicted after a trial by jury of resisting law enforcement, a Class A misdemeanor, and conspiracy to commit robbery, a Class B felony. He was sentenced to a total of twenty years, with ten years suspended. Newman now ap-

peals his convictions and the resulting sentence. We affirm.

### Issues

Newman raises two issues on appeal, which we restate as:

1. Whether the trial court properly allowed the State to use a juvenile adjudication to impeach the testimony of a defense witness; and

2. Whether the trial court properly considered mitigating and aggravating circumstances in sentencing Newman with an enhanced sentence.

### Facts and Procedural History

The following are the facts most favorable to the verdict: Newman and Dayon Miller went to Anderson, Indiana in a car driven by Harry Johnson. Once there, the three followed a car driven by Antonio King and decided to rob him. Before King had pulled into the driveway of his home, at least two of the men exited the car Johnson was driving. One of the men ran from behind King's house and pointed a handgun at King as he backed into his driveway. Another man stayed out of view behind the corner of King's house and threatened King by saying he also had a gun pointed at him. The men then proceeded to rob King of $160 and a gold chain necklace. They also took a radio from the trunk of King's automobile. Both men then fled the scene in the automobile Johnson was driving.

King called the police to report the robbery and described the getaway car. The Anderson Police Department broadcast the description of the getaway car to their officers over the radio dispatch. When Officer Josh Senseney saw an automobile matching that description, he followed the car until Indiana State Trooper Chris Noone arrived to provide backup. When the officers attempted to pull the car over, a high-speed chase ensued. Traveling at speeds of greater than 100 miles per hour, Officer Senseney soon lost radio contact with his department, and Trooper Noone took over the chase near Fishers. Soon after, Johnson, Miller, and Newman exited the car and left it to hit a concrete divider. Noone captured Johnson, and additional police backup apprehended Newman with the help of a canine unit. Miller successfully evaded the police. Newman admitted to Trooper Noone that he had run.

The State charged Newman with robbery, conspiracy to commit robbery, and resisting law enforcement. The jury found Newman not guilty of robbery and guilty of conspiracy to commit robbery and resisting law enforcement. The trial court sentenced Newman to one year for resisting law enforcement, and twenty years for conspiracy to commit robbery, to run concurrently. The court suspended ten years of the sentence and ordered probation for six years upon release.

This appeal ensued.

### Discussion and Decision

#### I. Use of Juvenile Adjudication for Impeachment

##### A. Standard of Review

The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will only reverse upon abuse of that discretion. *Johnson v. State*, 671 N.E.2d 1203, 1205 (Ind.Ct.App.1996), *trans. denied.* Newman claims the trial court erred when it allowed the State to impeach defense witness Dayon Miller with a prior juvenile adjudication of theft. He correctly points out that, under Indiana Evidence Rule 609(d), "[e]vidence of juvenile adjudications is generally not admissible under this rule." The State responds that there are three reasons why the court properly allowed evidence of Miller's juvenile adjudication into evidence: 1) the witness opened the door to such evidence; 2) the evidence was allowed under Evidence Rule 609(a); and 3) the evidence was allowed under Evidence Rule 609(d) as necessary for a fair determination of guilt or innocence.

## B. Opening the Door

■ The State contends that Miller's own testimony offered his character into evidence, and he therefore opened the door to evidence of his prior theft adjudication. It is generally true that when a witness offers evidence of his own character, he opens the door to the subject of his character for that trait placed in issue, and the State can introduce evidence of specific misconduct in rebuttal. *Brown v. State,* 577 N.E.2d 221, 232 (Ind.1991), *cert. denied,* 506 U.S. 833, 113 S.Ct. 101, 121 L.Ed.2d 61 (1992).

This court has allowed evidence of a juvenile adjudication to impeach a defendant upon finding that he had opened the door to such evidence. *Terrell v. State,* 507 N.E.2d 633, 635 (Ind.Ct.App.1987), *trans. denied.* In *Terrell,* defense counsel claimed during his opening statement that his client had no prior criminal record. *Id.* at 635. The trial court then lifted a motion in limine prohibiting the State from mentioning the defendant's prior juvenile record and allowed the State to impeach the defendant by introducing evidence of his prior juvenile record and adjudication for nine acts of burglary. *Id.* at 634. This court, acknowledging that juvenile adjudications are not ordinarily admissible for impeachment purposes, nonetheless affirmed the trial court: "It would be unconscionable to permit [defendant's] attorney to state to the jury that his client had no record and then permit him to prevent disclosure to the jury of a juvenile adjudication of delinquency for nine acts of burglary." *Id.* at 635.

■ The State claims that Miller offered his own character into evidence by claiming under cross-examination by the State that he did not know that the car in which he, Johnson, and Newman were traveling was stolen. We disagree for two reasons. First, we fail to see how this response offers evidence of any particular character trait which could be impeached by evidence of prior misconduct. Miller did not claim that he had never stolen a car or been involved in prior criminal activity. Second, the statements made by Miller in the case at bar were elicited by the State on cross-examination. Therefore, the possibility that the jury could be misled does not exist as it did in *Terrell.* Miller offered no evidence of his own character during his testimony. Therefore, the door was not opened for the State to introduce evidence of Miller's prior juvenile adjudications for purposes of impeachment.

## C. Crimes of Dishonesty

■ The State next contends that even if Miller's testimony did not open the door, the evidence of his juvenile adjudication was proper because crimes of dishonesty are admissible for the purpose of attacking a witness' credibility. Since theft is a crime of dishonesty, *Rowe v. State,* 704 N.E.2d 1104, 1108 (Ind.Ct.App. 1999), *trans. denied,* the State contends the evidence was properly admitted. Again we disagree. Under Evidence Rule 609(a), evidence of conviction of a crime involving dishonesty or false statement shall be admitted if it meets the time limits imposed by subsection (b). However, juvenile adjudications are specifically governed by Evidence Rule 609(d), not Evidence Rule 609(a).

## D. Necessity to Determine Guilt or Innocence

■ The State also claims that evidence of the juvenile adjudication was properly admitted under the exception in Evidence Rule 609(d). This rule states that:

Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a

fair determination of the issue of guilt or innocence.

The State claims that the evidence at issue here met these requirements. This is a criminal case, and the witness is not the accused. Therefore, the first two elements of the exception are met. The rule next requires that conviction of the offense would be admissible to attack the credibility of an adult. This refers us back to the requirements of subsections (a) and (b) of Rule 609. Since theft is a crime of dishonesty, it meets the requirements of Evidence Rule 609(a).

The next issue we must examine is whether the requirements of Evid. R. 609(b) are met.

The relevant portion of Indiana Evidence Rule 609 reads as follows:

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or, if the conviction resulted in confinement of the witness then the date of the release of the witness from the confinement....

Evid. R. 609(b). The theft adjudication in question occurred on June 17, 1995. It is therefore well within the time limits imposed by Rule 609(b). Therefore, had Miller committed this crime as an adult, it would be admissible against him.

The last requirement is that the trial court must be satisfied that the evidence in question is necessary for a fair determination of the issue of guilt or innocence of the defendant. Here, there is no evidence that the trial court made any such determination. The State points out that the trial court said, "Well [Miller has] laid the basis for the necessity to introduce the evidence to impeach...." R. 386. However, the record reveals that the Court was responding to the State's claim that Miller had opened the door to further evidence of his character. The following exchange took place at the trial court:

[Prosecutor]: I think there's sufficient foundation, Judge, to enter into evidence at this point and time, that in fact this fellow has been convicted of theft since he's denying that a theft even occurred at this point and time.

[Defense]: I fail to see the ... run that by me again, David.

[Court]: Well, he's laid the basis for the necessity to introduce the evidence to impeach, so I will lift the motion in limine over objection.

R. 386.

Based on the record, it does not appear the trial court made any finding that the admission into evidence of Miller's juvenile adjudication was necessary for a fair determination of the issue of guilt or innocence of the defendant, but instead was responding (incorrectly) that Miller had opened the door to evidence of his juvenile adjudications. Therefore, the requirements of Rule 609 were not met.

Because juvenile adjudications are generally inadmissible to impeach the credibility of a witness, and Miller's testimony failed to fall into any exception to this rule, the trial court improperly admitted evidence of Miller's juvenile adjudication for the purposes of impeaching his character.

### E. Harmless Error

Because the trial court erred in admitting evidence of Miller's juvenile adjudications, we must now determine whether this error necessitates reversal of Newman's conviction. An error is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor as not to affect the substantial rights of the parties. *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995); Ind. Trial Rule 61. Reversal is required only if the record reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict. *Sundling v. State*, 679 N.E.2d 988, 994 (Ind.Ct. App.1997). The erroneous admission of evidence is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously

admitted evidence played a role in the conviction. *Johnson,* 671 N.E.2d at 1207.

■ Here, there was substantial independent evidence supporting Newman's conviction for resisting law enforcement and conspiracy to commit robbery. The State introduced eyewitness testimony from the police officers who apprehended Newman that he fled from the police. Harry Johnson also testified that he, Miller, and Newman had agreed to rob Antonio King. Johnson testified that Newman got out of the car and was the person who helped Miller rob King. During Newman's case-in-chief, the defense called Miller to the witness stand. Miller denied there was any agreement to rob King. It was during the State's cross-examination that the court erroneously admitted the evidence of Miller's juvenile adjudications. This improperly admitted evidence was only used to impeach the credibility of a defense witness, not as evidence of Newman's guilt or innocence. Given the substantial independent evidence of guilt, the admission into evidence of a defense witness' juvenile adjudications was sufficiently minor as to not affect Newman's substantial rights. Therefore, the error was harmless, and the conviction will not be reversed.

## II. Sentence

### A. Standard of Review

■ Newman next contends that the trial court erred in sentencing him to an enhanced sentence. The presumptive sentence for a Class B felony is ten years. Ind.Code § 35–50–2–5. The trial court can add not more than ten years for aggravating circumstances. *Id.* Newman's sentenced was enhanced to twenty years for aggravating circumstances, with ten years suspended. We review the trial court's sentencing determination only for an abuse of discretion, and it is primarily the trial court's responsibility "to determine the weight to be given the aggravating or mitigating circumstances." *Ross v. State,* 676

N.E.2d 339, 347 (Ind.1996) (quoting *Smith v. State,* 580 N.E.2d 298, 303 (Ind.Ct.App. 1991)). The proper weight to be afforded by the trial court to the mitigating factors may be to give no weight to them at all. *Id.*

■ The State has entirely failed to respond to Newman's second claim in its Appellee's brief. An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief. *Hacker v. Holland,* 575 N.E.2d 675, 676 (Ind.Ct.App. 1991), *trans. denied.* This circumstance does not, however, relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required. *Blunt–Keene v. State,* 708 N.E.2d 17, 18 (Ind.Ct. App.1999). Controverting arguments advanced for reversal is still an obligation which properly remains with counsel for the appellee. *Id.* Therefore, Newman need only establish that the lower court committed prima facie error to win reversal on this issue. Prima facie means at first sight, on first appearance, or on the face of it. *State v. Palmer,* 496 N.E.2d 1337, 1338 (Ind.Ct.App.1986). As this court said in *Gardner v. State,* 591 N.E.2d 592 (Ind.Ct.App.1992):

> The prima facie standard thus prevents two evils which would otherwise undermine the judicial process. First, by requiring the appellant to show some error, we ensure that the court, not the parties, decides the law. Second, by allowing the appellant to prevail upon a showing simply of prima facie error, we avoid the improper burden of having to act as advocate for the absent appellee.

*Id.* at 593.

### B. Sentence Meets Statutory Mandate

■ Newman first claims the trial court failed to follow the mandate of Indiana Code section 35–38–1–7.1, which governs those factors the trial court *shall* consider in sentencing, and those the trial court *may* consider during sentencing. Newman asserts that, because the court

failed to consider his young age and his remorse, it failed to follow the statutory mandate. However, Indiana Code section 35–38–1–7.1(c) contains no requirement that the court consider any mitigating factors. The consideration of mitigating factors is not mandatory and is within the trial court's sound discretion. *Casey v. State,* 676 N.E.2d 1069, 1073 (Ind.Ct.App. 1997). Therefore, the trial court did not abuse its discretion by failing to consider any mitigating factors offered by Newman.

### C. Proper Consideration of Aggravating Factors

■ Newman next claims that the trial court improperly considered aggravating factors. Newman claims that the trial court did not state specific reasons why it found Newman was in need of correctional rehabilitative treatment. The sentencing order does merely follow the statutory language when listing the aggravating factors. This is not proper. *See Jones v. State,* 675 N.E.2d 1084, 1087 (Ind.1996). If a trial court uses aggravating circumstances to enhance a presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Thacker v. State,* 709 N.E.2d 3, 9 (Ind.1999).

■ Nevertheless, if the trial court states proper reasons for enhancing a sentence but merely fails to do so with sufficient particularity, such an error does not necessarily mandate remand. *Singer v. State,* 674 N.E.2d 11, 14 (Ind.Ct.App.1996). As long as the record indicates that the trial court engaged in the evaluative processes and the sentence was not manifestly unreasonable, the purposes of the sentencing statement have been satisfied. *Id.* When reviewing a sentencing statement, this court is not limited to the written sentencing order but may examine the record as a whole to determine that the trial

court made a sufficient statement of its reasons for selecting the sentence imposed. *Id.* In sentencing Newman, the trial court stated in part, "[The court] finds aggravating circumstances to be the defendant's prior criminal history as a juvenile, which is significant and at his age is [a] precursor of unfortunate things to happen unless his pattern of behavior does not change." R. 456. This indicates the trial court did more than repeat statutory language. The trial court considered Newman's prior criminal history, and determined that, unless he was incarcerated, there was a risk he would repeat his pattern of criminal behavior. Therefore, the trial court found that Newman was in need of commitment to the Department of Correction. The trial court properly considered the aggravating factors in enhancing Newman's sentence.

### D. Sentence Not Manifestly Unreasonable

■ Newman lastly asserts that the sentence, even if permitted by statute, is nevertheless "manifestly unreasonable" in light of the nature of the offense and the character of the offender. Manifest has been defined as that which is clearly apparent, obvious, or readily perceived. *Ogle v. State,* 698 N.E.2d 1146, 1151 (Ind. 1998). This is a high standard which Newman fails to meet. Newman conspired to rob Antonio King. There was testimony that he claimed he had a pistol drawn on the victim. Newman fled from the police. Given these circumstances, the sentence is not manifestly unreasonable. Therefore, the trial court did not abuse its discretion in enhancing Newman's sentence to twenty years with ten years suspended.

### Conclusion

In conclusion, the trial court's error in admitting evidence of a defense witness' juvenile adjudications was harmless. Further, the trial court did not abuse its discretion in enhancing Newman's sentence.

We therefore affirm Newman's conviction and sentence.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.